1
2
3          UNITED STATES DISTRICT COURT
4              DISTRICT OF NEVADA
5                   * * *
6    SUSAN PETERSON,                    Case No. 3:19-cv-00442-ART-WGC
                          Plaintiff,
7
                v.                              ORDER
8
     EVERGREEN       TRANS,      INC.;
9    BALWINDER  SINGH,  and DOES I-X,
     inclusive,
10
                          Defendants.
11

12          Before the Court are: (1) Plaintiff Susan Peterson's Motions in Limine to

13   exclude certain evidence (ECF No. 52) from the jury trial in this case scheduled

14   to begin on April 17, 2023; and (2) Defendants Evergreen Transport Inc. and

15   Balwinder Singh's Motion for Sanctions (ECF No. 53) which also seeks to exclude

16   certain evidence. The Court grants and denies Ms. Peterson's Motions in Limine

17   as set forth below, and the Court denies Defendants' Motion for Sanctions.

18   I.    MOTIONS IN LIMINE

19              A.    COLLATERAL SOURCE RULE

20          The parties dispute whether Defendants can introduce evidence of

21   insurance and Medicare billing rates generally in order to establish that the

22   amounts of Plaintiff's medical bills were unreasonable. Plaintiff argues that

23   Defendants should be prohibited from entering into evidence the expert opinion

24   of Defendants' expert, Dr. Olson, insofar as his opinions on the reasonableness

25   of Plaintiff's medical bills "are a result of applying Medicare rates, insurance rates

26   and CPT codes that reduce Ms. Peterson's actual medical bills to amounts that

27   Medicare pays to medical providers." (ECF No. 52.) Plaintiff argues that

28

introduction of this evidence would violate the collateral source rule as well as "mislead the jury into thinking that her medical expenses are being paid for by Medicare[.]" (*Id.*) Defendants argue that they do not seek to introduce collateral source evidence relating to any payments or medical provider discounts actually given to Plaintiff, but rather seek to introduce evidence of insurance and Medicare billing rates generally in order to establish that the amounts of Plaintiff's medical bills were unreasonable, which would not be barred under the collateral source rule.

The collateral source rule provides that if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. *Proctor v. Castelletti*, 112 Nev. 88, 90, 911 P.2d 853, 854 (1996). Federal courts apply state law in matters involving the collateral source rule. *In re Air Crash Disaster Near Cerritos, Cal., On Aug. 31, 1986*, 982 F.2d 1271, 1277 (9th Cir. 1992); *see also Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) ("Most evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern in diversity cases. However, the Federal Rules do not supplant all state law evidentiary provisions with federal ones. Rather, state evidence rules that are intimately bound up with the state's substantive decision making must be given full effect by federal courts sitting in diversity.") (internal quotations omitted).

In *Tri-Cnty. Equip. & Leasing v. Klinke*, 128 Nev. 352 (2012), the Supreme Court of Nevada stated in dicta and in a concurrence that evidence of medical provider discounts, i.e. reductions in medical bills that an insurer of the injured party obtains from the medical provider, fall within the ambit of the collateral source rule and should be excluded. *Id.* at 357 n.6, 360. The Court stated, "The focal point of the collateral source rule is not whether an injured party has 'incurred' certain medical expenses. Rather, it is whether a tort victim has

2

received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor. In general, the medical provider and the third-party insurer paying the medical costs on behalf of the insured tort victim negotiate the write-downs. The reduced amounts are as much of a benefit for which a plaintiff paid consideration in the form of insurance premiums as are the actual cash payments made by his health insurance carrier to the health care providers. The write-downs constitute compensation or indemnity received by a tort victim from a source collateral to the tortfeasor. As a result, evidence of write-downs creates the same risk of prejudice that the collateral source rule is meant to combat." *Id.* at 360 (internal quotations omitted); *see Alexander v. Wal-Mart Stores, Inc.*, 2013 WL 427132, at *4 (D. Nev. Feb. 1, 2013) (citing *Tri-Cnty. Equip & Leasing*).

The evidence that Defendants seek to present does not fall squarely within the collateral source rule, since Defendants do not seek to introduce evidence regarding any medical provider discounts given to Plaintiff specifically, but rather evidence of write-downs generally given for certain procedures. Nonetheless, for the reasons set forth in *Tri-Cnty. Equip & Leasing*, the Court finds that this evidence should also be excluded. Plaintiff's Motion in Limine is granted. Defendants and their experts may not allude to insurance or Medicare billing rates or use them in their calculations, though Defendants remain free to contest the reasonableness of the billed amounts by other means.

## B.   REPORTS OF DR. OLSON

Plaintiff argues that Defendants' expert, Dr. Cash, should not be permitted to reference, comment on, or utilize the reports prepared by Defendants' previous expert, Dr. Olson. Dr. Olson withdrew from his practice during the litigation and Defendants submitted an Emergency Motion to Substitute Defendants' Expert, which the Court granted. (ECF Nos. 38, 41.) Defendants appear to concede that Dr. Olson's reports are not admissible at trial, however Defendants argue that

their substitute expert, Dr. Cash, may properly rely on information in the reports created by Dr. Olson. The Court agrees that under Fed. R. Evid. 703, a report of another doctor is properly considerable by an expert doctor since doctors would reasonably rely on such reports when forming opinions. Plaintiff's Motion in Limine to prevent Dr. Cash from relying on the reports prepared by Dr. Olson is denied. However, as explained above, Defendants are not permitted to refer to or utilize insurance or Medicare billing rates to establish the reasonableness of the rates billed to Ms. Peterson, so Dr. Cash is not permitted to refer to or utilize any portion of Dr. Olson's reports which are based on such billing rates.

### C.    INSURANCE

Plaintiff and Defendants agree that evidence of or references to any liability insurance held by Plaintiff is improper. As such, the Court orders that the parties shall not present any evidence or ask any questions regarding any insurance coverage potentially held by Plaintiff, including regarding actions by any insurance company for coverage potentially held by Plaintiff. Plaintiff's Motion in Limine is granted.

### D.    CHARACTERIZATION OF THE CASE

Plaintiff argues that the Court should enter an order preventing Defendants from referring to this case as "attorney-driven litigation" or as a "medical buildup" case and generally prohibiting Defendants from arguing that "Plaintiff's attorneys directed Plaintiff's medical care, and that Plaintiff's physicians performed unnecessary, unwarranted, and non-indicated medical procedures." Defendants have agreed not to use the terms "attorney-driven," "medical buildup," and "conspiracy," but assert that they remain entitled to impeach Plaintiff's witnesses by introducing evidence of partiality, which, in this case, involves evidence relating to the frequency in which Plaintiff's doctors involve themselves in litigation and whether Plaintiff was referred to her doctors by her attorneys.

Relevant evidence is admissible if it is not barred by a specific evidentiary

rule and if it is not unduly prejudicial relative to its probative value. The credibility of witnesses is generally relevant, and evidence of bias or partiality is generally admissible to demonstrate or impeach credibility. Evidence that a witness has a medical lien or was referred to by plaintiff's counsel is relevant to show bias and challenge credibility. *See Ruiz v. Walmart Inc.*, 2021 WL 5759043, at \*3–4 (C.D. Cal. Oct. 28, 2021) ("Evidence that a testifying medical provider holds a lien is relevant to show that provider may have an interest in inflating bills or testifying in favor of Plaintiff to ensure payment. Additionally, the existence of a regular referral relationship between a plaintiff's lawyer and a testifying expert could impact that expert's credibility.") (internal quotations omitted); *Alexander v. Wal-Mart Stores, Inc.*, 2013 WL 427132, at \*6 (D. Nev. Feb. 1, 2013) (denying similar motion in limine). However, where there was no evidence of a referral relationship that predated the plaintiff's referral or a medical lien, courts have prohibited introduction of this evidence. *E.g.*, *Dillon Cullinan v. City of Los Angeles*, 2022 WL 18216097, at \*1 (C.D. Cal. July 27, 2022).

Defendants have already agreed not to use certain terms which may be unduly prejudicial. The parties appear to contest, however, whether there is any evidence that Ms. Peterson's witnesses had a preexisting referral relationship or treat on medical liens. (*Compare* ECF No. 52 at 6 (arguing that Ms. Peterson's treatment was medically necessary), *with* ECF No. 54 at 5 ("Plaintiff sought medical attention from doctors who enjoy referral relationships and treat on liens.").) At this time the Court will not issue a general prohibition preventing Defendants from examining Plaintiff's witnesses regarding their referral relationships and involvement in litigation as well as whether there was a medical lien. Nonetheless, the Court will entertain and may grant specific objections relating to these topics during trial. Furthermore, if there is no evidence of a preexisting referral relationship or medical lien, Defendants will not be permitted to refer to referral relationships or medical liens or imply that they may have

existed in this case. Plaintiff's Motion in Limine is granted to the extent of Defendants' agreement not to use certain terms and denied in all other aspects.

### E.    DEFENDANTS' FINANCIAL CONDITION

Plaintiff argues that Defendants should be prevented from referencing their financial condition as it relates to their ability to pay for Plaintiff's damages, including references to the existence or non-existence of insurance which would cover the judgment. Defendants agree and further request that Plaintiff be prohibited from referencing her financial condition as well. The Court finds that the financial condition of either party is not relevant to this matter. The Court grants Plaintiff's Motion in Limine and further orders that Plaintiff shall not reference her financial condition during trial.

### F.    PRIOR INJURIES

Plaintiff argues that "all evidence regarding prior unrelated injuries or treatment should be excluded[,]" including evidence relating to a prior wrist injury and a gallbladder surgery. Defendants agree not to reference the wrist injury or gallbladder surgery but contend that evidence of prior spinal pain and degeneration as well as psychological issues are relevant to this case.

Evidence of prior injuries or preexisting conditions is relevant to the issue of whether medical expenses were caused by the injury at issue or stem from the prior injuries or preexisting conditions, provided that the defendant presents evidence of a causal connection between the prior injuries or conditions and the injury at issue. *Gresham v. Petro Stopping Centers*, LP, 2011 WL 1748569, at *4 (D. Nev. Apr. 25, 2011) (explaining the relevance of past injuries and conditions and declining to issue a ruling in limine on whether to exclude prior injury evidence because there was not enough context for the court to determine whether or not the prior injury evidence was related to the injury at issue); *see also FGA, Inc. v. Giglio*, 128 Nev. 271, 283 (2012) ("A prior injury or preexisting condition may be relevant to the issues of causation and damages in a personal

injury action. In order for evidence of a prior injury or preexisting condition to be admissible, a defendant must present by competent evidence a causal connection between the prior injury and the injury at issue.") (internal citations omitted).

The Court will grant Plaintiff's Motion in Limine to the extent of Defendants' agreements and as to psychological conditions, but will not enter an order at this stage generally prohibiting Defendants from inquiring into spinal conditions that predate the injury and which may have influenced Plaintiff's conditions and course of treatment after the accident. Defendants have not made a prima facie showing of a causal connection between any psychological condition and the injuries at issue, nor is such a connection obvious or natural, such as the connection a potential prior spinal injury has to a claimed spinal injury. At present, the Court lacks sufficient information concerning the prior spinal conditions to evaluate their relationships to the injuries at issue. The Court will hear evidence at calendar call on the causal relationships of the alleged prior spinal injuries at issue before determining its admissibility. Defendants remain obligated to show that all evidence is relevant and to support their evidence with proper foundation.

## II.    MOTION FOR SANCTIONS

Defendants seek an order of sanctions excluding evidence of certain medical care received by Plaintiff from April 15, 2021 to August 30, 2022, allegedly proffered by Plaintiff after the discovery period closed on April 15, 2021. (ECF No. 53.) Defendants also state that Plaintiff failed to timely disclose a computation of damages for future medical expenses, past wage loss, future loss of wages and earning capacity, past and future loss of household services, past and future loss of consortium claims. Plaintiff responds that this care is simply the continuation of the care that she was receiving before the discovery period closed, which Plaintiff has timely disclosed and supplemented throughout this case, and that there is no prejudice to Defendants by the timing of this disclosure

1  since it is Defendants' position that all the care she received after June 11, 2017
2  was not related to the subject accident. (ECF No. 56.)

3       Defendants' Motion for Sanctions was filed on September 23, 2022, when
4  this case was set for trial beginning on November 1, 2022. At that time, the
5  disclosure of Plaintiff's supplemental information, which Plaintiff provided on
6  September 6, 2022, was 56 days before trial. However, after the filing of
7  Defendants' Motion but before trial, the trial date was rescheduled to April 17,
8  2023, due to a scheduling conflict with this Court's criminal docket. (ECF No.
9  59.) This rescheduling gave Defendants an additional 167 days to evaluate this
10  evidence. For this reason, and because the Court agrees with Plaintiff that
11  Defendants were on notice that Plaintiff's care would be continuing, the Court
12  finds that Plaintiff's submission of the additional evidence was harmless and
13  substantially justified. Defendants' Motion for Sanctions is denied.

14       However, if Plaintiff has not yet provided a calculation of damages as
15  required by Fed. R. Civ. P. 26(a)(1)(A)(iii), Plaintiff is ordered to do so as soon as
16  practicable.

17

18       It is so ordered.

19

20       DATED THIS 13th day of February 2023.

21

22

23  _____

24  ANNE R. TRAUM
    UNITED STATES DISTRICT JUDGE

25

26

27

28

8